# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERIE INSURANCE EXCHANGE,** | ) |
| | ) |
| Plaintiff, | )  2:11-cv-429 |
| v. | ) |
| | ) |
| **SCOTTSDALE INSURANCE COMPANY,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the MOTION FOR SUMMARY JUDGMENT OF DEFENDANT SCOTTSDALE INSURANCE COMPANY, filed at Doc. No. 30, a concise statement of material facts (Doc. No.31), an appendix to the concise statement of material facts (Doc. No. 32), and a brief in support of its motion for summary judgment (Doc. No. 33). Also pending before the Court is PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGEMNT, filed at Doc. No. 36. In support of its amended motion for summary judgment, Plaintiff has also filed a concise statement of material facts with attached exhibits (Doc. No. 37), and a brief in support of its amended motion (Doc. No. 38). Both parties have also responded to their opponent's respective motions for summary judgment with briefs in opposition (Plaintiff's brief filed at Doc. No. 40, and Defendant's brief filed at Doc. No. 41), as well as responsive concise statements of material fact (Plaintiff's responsive statement at Doc. No. 39, and Defendant's responsive statement at 42). The issues have been fully presented and briefed, and are now ripe for disposition.

On or about March 2, 2011, Plaintiff, Erie Insurance Exchange ("Erie"), initiated an action for Declaratory Judgment against Defendant, Scottsdale Insurance Company, via a Complaint

filed in the Court of Common Pleas of Allegheny County Pennsylvania, docketed at Case No. GD-11-003925. *See* Doc. No. 1, Notice of Removal, at Ex. A ("Complaint"). Generally speaking, the civil action arises from insurance coverage claims made by Kyrk A. Pyros under insurance policies issued to him for defense and indemnification relative to two civil action complaints that had been filed against him which alleged discriminatory housing actions and practices in the George Washington Hotel (the "Hotel"), a residential building located in Washington, PA.[1] The Hotel is owned and operated by The George Washington, L.P. ("Washington, L.P.") and is managed by PyRsquared Group, Inc. ("PyRsquared"). According to the two discrimination complaints, Kyrk A. Pyros is the general partner of Washington, L.P., and is also the owner and/or principal officer and agent of PyRsquared Group, Inc. and PyRsquared Management Company, Inc. In a nutshell, Plaintiff Erie seeks an award ordering Defendant Scottsdale to reimburse it for all sums expended by Erie for the defense and indemnification of Mr. Pyros in those two civil actions.

Defendant removed the action to this Court, and subsequently answered on April 15, 2011, *see* Doc. Nos. 1 & 7, and a period of discovery commenced. After discovery concluded, both parties moved for summary judgment. Before the Court are the parties' cross-motions for summary judgment on the claims for declaratory relief. For the reasons stated herein, the Court will grant summary judgment in favor of Defendant Scottsdale.

**Standard of Review**

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

1  While named as a "Hotel", the building actually functions as a multi-unit apartment complex with approximately forty-one (41) housing units.

Fed.R.Civ.P. 56(a). The movant must identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To withstand summary judgment, the non-movant must show a genuine dispute of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A dispute is "genuine" only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Cross-motions for summary judgment "are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968).

The court must determine the governing state law. A federal district court sitting in diversity must apply the choice-of-law rules of the state where it sits. *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 170 (3d Cir.2011). Under Pennsylvania law, the law of the state in which an insurance policy is issued and delivered governs the action. *Bennison v. Nationwide Mut. Ins. Co.*, 42 Pa. D. & C.4th 466, 473 (Pa.Ct.Com.Pl.1999). The named insureds procured the insurance policy in Pennsylvania, and Pennsylvania law governs this action.

The court interprets an insurance policy as a matter of law when the facts are not in dispute.

*Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985).

## Factual Background

The following facts are taken from the evidentiary record and are not in dispute.

**A.  Insurance policies**

**1.  Terms of the Scottsdale Commercial General Liability Policy**

Defendant Scottsdale issued a commercial general liability policy, number CLS1421707, to PyRSquared Management, Inc. and The George Washington, L.P., which was effective from December 31, 2007 to December 31, 2008.  Pl. App. at Ex. E.  The policy limits of liability for Coverage B, "Personal and Advertising Injury Liability", are $1 million per occurrence, and $2 million in the aggregate (the "Scottsdale Policy").  Doc. No. 32 at Ex. C ("Def. App. at Ex. C").  The "Description of Business" block on the Scottsdale Policy's declaration pages states that the Named Insured is an "organization including a corporation (other than a partnership, joint venture or limited liability company)."  *Id*.  In terms of Coverage B, the Scottsdale Policy included in relevant part:

> COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY
> 
> 1. Insuring Agreement
> 
>    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. …
> 
> 2. Exclusions
> 
>    This insurance does not apply to:

a. Knowing Violation of Rights of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

*Id*.

The Scottsdale Policy contains the following "Who Is Insured" provision, in pertinent part:

SECTION II – WHO IS INSURED

1. If you are designated in the Declarations as:

…

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their liability as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

*Id*. The Scottsdale Policy also contains the following "Other Insurance" provision, as modified via endorsement, in pertinent part:

AMENDMENT TO OTHER INSURANCE CONDITION

4. Other Insurance

   a. Primary Insurance

   This insurance is primary expect when b. below applies.

   b. Excess Insurance

   This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

…

   (4) That is valid and collectible insurance available to you under any other policy.

   When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if another

5

>> insurer has a duty to defend against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
>
> …
>
> If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

*Id*.

### 2. Terms of the Erie Ultraflex Policy and the HomeProtector Policy

Plaintiff Erie issued an Ultraflex Package Policy, ULF (Ed. 3/01) UF-8126, #Q48-0450306 (the "Ultraflex Policy") to Kyrk Pyros, with a policy effective date of December 4, 2007, and a termination date of December 4, 2008, and with limits of $1 million for personal and advertising injury and $2 million in the aggregate. *See* Doc. No. 37 at Ex. A ("Pl. App. at Ex. A"); *see also*, *id*. at Ex. B ("Ultraflex declarations page"). Erie also issued a HomeProtector policy, #Q59-1507624 (the "HomeProtector Policy") to Mr. Pyros. *See* Pl. App. at Ex. C (policy) and Ex. D (declarations page). The commercial general liability coverage part of the Erie Ultraflex Policy includes the following "Who Is An Insured" provision, in pertinent part:

> SECTION II – WHO IS AN INSURED
>
> 1. If you are designated in the Declarations as:
>
> a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

*Id*. The commercial general liability coverage part of the Ultraflex Policy contains the following "Other Insurance" provision, in pertinent part:

> 4. Other Insurance
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

      a.      Primary insurance

      This insurance is primary expect when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in c. below.

*Id*.

The Erie Homeprotector Policy was issued to Mr. Pyros effective from November 15, 2007 through November 15, 2008, with personal liability limits of $300,000 per occurrence. Pl. App. at Ex. C.

**B.    Litigation naming Kyrk A. Pyros as a Defendant**

Two civil actions were brought against a number of parties, including Pyros, that subsequently involved litigation defense on the part of Plaintiff Erie and Defendant Scottsdale. More particularly, the cases of *Milan v. Pyros*, United States District Court for the Western District of Pennsylvania, No. 2:08-cv-320 (the "Milan Action"), and *Gwin v. Pyros*, United States District Court for the Western District of Pennsylvania, No. 09-cv-527 (the "Gwin Action") were each filed by former residents of the Hotel. *See* Second Amended Complaint in Milan Action at Pl. App. at Ex. F; Complaint in Gwin Action at Pl. App. at Ex. G.

The allegations in the complaints of the Milan and Gwin Actions are not in dispute between Erie and Scottsdale. Both the Milan and Gwin Actions arose out of alleged discriminatory housing actions/practices allegedly committed by certain defendants at the Hotel in violation of the Fair Housing Act Amendments ("FHAA"), as amended, 42 U.S.C. § 3604 & 3617, and the regulations promulgated thereto at 24 C.F.R. § 100.200, *et. seq*. *Id*. While styled a "hotel", the Hotel apparently functioned as a multi-unit apartment complex with approximately forty-one (41)

7

units.  *Id*.  The Hotel is owned and operated by The George Washington, L.P. ("Washington L.P.") and is managed by PyRsquared Group, Inc. ("PyRsquared").  *Id*.

According to the complaints in the Milan and Gwin Actions, Kirk A. Pyros is the general partner of Washington, L.P. and "is also the owner and/or principal officer and agent of PyRsquared Group, Inc. and PyRsquared Management Company, Inc."  As such, the complaints in both the Milan and Gwin Actions specifically named Kyrk A. Pyros as a defendant "individually and as General Partner and/or owner of the George Washington Hotel, PyRsquared Group, Inc., PyRsquared Management Company, Inc., and KP Builders, Inc."  Both Milan and Gwin generally claimed that the defendants wrongfully discriminated against them based upon their disabilities in connection with their tenancy at the Hotel and asserted causes of action under the FHAA, as well as Pennsylvania's Unfair Trade Practices and Consumer Protection Law (73 P.S. §§ 201 – 02).

    1.    Milan Action

In the Milan action, Robert Milan, Kathleen Kleinmann, and TRIPIL Services sued for housing discrimination.  The following averments were taken from the Milan complaint.  Milan and Kleinmann are both disabled, and alleged that their statutory right to equal housing had been violated.  Since 2004, Kleinmann had lived in apartment 802 of The George Washington.  Kleinmann suffers from muscular dystrophy and cannot walk.  PyRsquared Management leased apartment 802 to Kleinmann for one-year terms.  During the relevant timeframe, the lease was set to expire on February 2, 2009.  Kleinmann is also the chief executive officer of TRIPIL Services, a non-profit corporation that advocates for disabled persons.  TRIPIL Services had a lease for

8

apartment 511 of Hotel, and used that apartment for transitional living quarters for persons with disabilities. The lease on apartment 511 was to expire on November 1, 2008.

Milan suffers from quadriplegia. He has an assistance dog named Daisy that helps him accomplish his daily living tasks. On or about December 25, 2007, Milan contacted Kleinmann for assistance in obtaining housing. On January 4, 2008, Ronald DeVerse, the daytime manager of the Hotel, told Kleinmann that Milan could lease apartment 1005 on a month to month basis. Because apartment 1005 was being repainted, Milan could stay in apartment 501 for the time being. The next day, January 5, Milan moved in to apartment 501 with Daisy. A security guard escorted Milan into the unit, and gave him the key. Several days later, on January 8, Kyrk Pyros informed Michael Cogley, the executive director of TRIPIL Services, that Milan would not be permitted to live with Daisy at the Hotel. Cogley responded that service animals, like Daisy, were permitted under the Americans with Disabilities Act, to which, Pyros allegedly replied, "I don't care what the ADA says."

On January 9, 2008, under the letterhead of PyRsquared Management, Kleinmann was served with a notice to quit, which provided her with the ten day notice required by law to commence eviction proceedings. On January 14, Pyros and DeVerse met with Milan in apartment 501. Kleinmann was also present. DeVerse told Milan that he and Daisy could no longer live at the Hotel. On January 17, 2008, once again under the letterhead of PyRsquared Management, Milan was served with a notice to quit. On January 22, 2008, The George Washington, L.P., sued Kleinmann and Milan for possession of apartments 802 and 501, alleging that Kleinmann breached her lease agreement and that Milan had no lease and was a trespasser. On February 4, 2008, TRIPIL Services was informed that its lease on apartment 511 was being

terminated, and that rent was being increased by $200 per month on that apartment and on Kleinmann's apartment. On February 13, 2008, the suit against Kleinmann and Milan for possession of the apartments was dismissed.

The Milan Action followed, in which those plaintiffs alleged that the above described acts unreasonably and illegally threatened Kleinmann and Milan with the loss of their apartments during the winter months, and also caused physical and emotional injuries, humiliation, and anxiety. Altogether, the Milan Action alleged 18 counts, most of which were for disability discrimination and/or retaliation in violation of federal statutes. Milan, Kleinmann and TRIPIL Services sought compensatory and punitive damages (including treble damages), attorney's fees and costs, and injunctive relief.

2. The Gwin Action

Lucy Gwin sued PyRsquared Management, Inc. and The George Washington, L.P., for discrimination under the FHAA. Ms. Gwin is a disabled individual who allegedly suffers from a seizure disorder, among other things. On September 23, 2007, Gwin entered into a ten-year lease for unit 722 of the Hotel, and she moved in on October 15, 2007. At some point, it was learned that Gwin was keeping four ferrets in her apartment. Gwin averred that the Hotel defendants had known that she kept ferrets in the apartment since November, 2007, but took no action until February 11, 2008.

By letter dated February 11, 2008, Gwin was advised that keeping ferrets was a violation of the lease and that she would have to remove them from the premises. Gwin responded by letter dated February 19, 2008, refusing to get rid of the ferrets and countering that the demand to do so amounted to retaliation and disability discrimination. Gwin received a response advising her that

she would be evicted if the ferrets were not removed and the balance of the bill for modifications to the apartment to accommodate her disabilities was not paid in full within 10 days.

Gwin alleges subsequent harassment, as well, including the allegedly deliberate interruption of her water service and someone "blow[ing] an air horn outside her door." Gwin alleges further harassment during the period of March 13, 2008 to October 3, 2009, including the defendants' refusal to fix her oven, and the announcement of a policy to lock the entrance of the Hotel after 7 p.m., without providing her with a key. Eviction proceedings were initiated against Gwin on March 13, 2008, and judgment in favor of the Hotel was entered on March 26, 2008. The Hotel pursued a complaint in ejectment and for possession in the court of Common Pleas of Washington County.

On May 1, 2009, Gwin filed her complaint in U.S. District Court for the Western District of Pennsylvania against, among others, PyRsquared Management Company, Inc. and PyRsquared Group, Inc., The George Washington, L.P., and Kyrk Pyros (individually and as a General Partner and/or owner of the hotel). Gwin also alleged various acts of housing discrimination, retaliation, and the "coerc[ing], intimidat[ing], threaten[ing], or interfer[ing] with Gwin in the exercise or enjoyment of" any right afforded to her under the FHAA. With respect to damages, Gwin alleges that "[a]s a direct result of the willful, intentional conduct of Defendants … [she] suffered extreme humiliation and emotional distress." The relief sought by Gwin included a temporary restraining order, preliminary injunction, as well as compensatory and punitive damages.

## C. Claims Handling by Plaintiff Erie and Defendant Scottsdale

On September 9, 2008, Defendant Scottsdale agreed to provide a defense under its Coverage B, Personal and Advertising Injury Liability, for The George Washington, L.P. and

PyRsquared under a complete reservation of rights in connection with the Milan action. Counsel assigned by Scottsdale proceeded to enter her appearance on behalf of Defendants Kyrk A. Pyros as general partner and/or owner of the George Washington Hotel, L.P., PyrSquared Group, Inc., and PyrSquared Management, Inc.; she explicitly noted within that entry of appearance that she was not entering her appearance on behalf of Kyrk A. Pyros individually. Plaintiff Erie agreed to defend Kyrk A. Pyros in his individual capacity in both the Milan Action and the Gwin Action under a complete reservation of rights, and assigned counsel to do so. Similarly, Scottsdale agreed to defend Pyros as general partner and/or owner of the George Washington, L.P., PyrSquared Group, Inc., and PyrSquared Management, Inc. in each action under its Coverage B with a complete reservation of rights.

Both the Milan Action and Gwin Action later settled with both Erie and Scottsdale contributing toward the settlement.

## Legal Analysis

The analysis begins with the FHAA claims raised by the plaintiffs in the respective Milan and Gwin Actions. The FHAA was enacted in 1988 to extend the principle of equal opportunity in housing to, among others, those with handicaps. *See Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 333 (2d Cir.1995) (citing H.R.Rep. No. 711, 100th Cong., 2d Sess. (1988) U.S.Code Cong. & Admin.News 2173). Pursuant to 42 U.S.C. § 3604(f)(2)(A), it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal

12

opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Additionally, it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [42 U.S.C. §§ 3603, 3604, 3605, or 3606]." 42 U.S.C. § 3617.

In the present action, Erie claims that "it is not obligated under the terms of insurance policies that it has issued to Mr. Pyros to defend or indemnify any party to a lawsuit naming, as a defendant, among others, Mr. Pyros." Complaint at ¶ 3. Scottsdale responds that its commercial insurance policy does not provide coverage for the underlying action brought in Pyros' individual capacity. To that end, the Court notes that Erie's position is somewhat compound. From the general premise that it had no obligation to defend Pyros, Erie takes the additional step of contending that Scottsdale did have the obligation to defend, and, therefore, should indemnify Erie. There is no dispute that it was appropriate for Scottsdale to defend the two actions on behalf of Pyros in his official capacity. Because Plaintiff's complaint is directed against Defendant Scottsdale, and no other party, the appropriate question becomes, therefore, should Scottsdale be responsible for defending Pyros in his individual capacity in the Milan and Gwin Actions?

Courts must pay particular attention to the insurance policy clause concerning who is covered under the policy. *Carpenter*, 637 A.2d at 1011. The clear and unambiguous terms of an insurance policy are construed according to their plain and ordinary meaning. *Linn*, 766 F.2d at 760–61. "Ambiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control." *McMillan v. State Mut. Life Ins. Co. of Am.*, 922 F.2d 1073, 1075 (3d Cir.1990).

13

Against this backdrop, the Court considers the terms of the Scottsdale policy in order to consider whether any ambiguity exists. Here, the Court has no difficulty in determining that no ambiguity exists in the terms of the respective policies when it comes to identifying who is an insured and who is not. The Scottsdale policy clearly identifies "Pyrsquared Management, Inc. & the George Washington, LP ATIMA" as the named insureds[2], and extends to "'executive officers and directors … but only with respect to their duties as officers or directors.'" Def. App. at Ex. C. The Erie Ultraflex policy, on the other hand, insures Kyrk A. Pyros individually.

In its motion for summary judgment, Erie contends that it had no obligation to defend or indemnify Pyros, in any capacity, in connection with the Milan and Gwin Actions, and contends that "[t]he averments in the pleadings of the Milan Litigation and the Gwin Litigation indicate that Mr. Pyros was not sued individually." Scottsdale, on the other hand, moves for summary judgment in its favor on the basis that it has no obligation to defend Pyros in his individual capacity nor indemnify Erie for doing so. Based upon the undisputed evidentiary record before it, the Court agrees with Defendant.

It is clear that the Fair Housing Act allows for claims to be brought against individual defendants. *Meyer v. Holley*, 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) (citing 42 U.S.C. § 3605(a), 42 U.S.C. § 3602(d)). In order to be liable for discrimination under the FHAA, a person must have the capacity and/or authority to discriminate in the sale or rental of housing. *See Michigan Protection and Advocacy Svc., Inc. v. Babin*, 799 F.Supp. 695, 712 (E.D.Mich.1992)

---

2   The acronym "ATIMA" is used for the phrase "as their interests may appear." *Giabocetti v. Ins. Placement Facility*, 500 Pa. 447, 457 A.2d 853, 857 (Pa.1983). The phrase "as their interests may appear," means "the parties are entitled to various shares in the proceeds [of an insurance policy], if they are entitled to any proceeds at all." *Campbell v. Royal Indem. Co. of N.Y.*, 256 Pa.Super. 312, 389 A.2d 1139, 1142 n. 5 (Pa.Super.Ct.1978). The inclusion of the acronym ATIMA after that of George Washington, L.P. in the insurance policy declaration limits the interest of the limited partnership in the insurance policy to its insurable interest in the property. *See Turner Constr. Co. v. John B. Kelly Co.*, 442 F.Supp. 551, 554 (E.D.Pa.1976).

(Congress intended FHAA to apply only to those persons who are "in a position directly to deny a member of a protected group his housing rights.") Where a person does not have the direct authority or capacity to discriminate in the sale or rental of housing, he or she can nevertheless be liable under the FHAA for actual coercion, violence, threats of violence, and extreme intimidation. 42 U.S.C. § 3617. Further, with respect to damages, punitive damages may be awarded for a defendant's "reckless or callous disregard" of a plaintiff's federally protected rights. *Smith v. Wade*, 461 U.S. 30, 51, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983). No showing of malice or an intent to harm is required. An owner of housing—and by extension the sole general partner of the partnership owner of such housing—may be liable for punitive damages if he or she "knew of or ratified" a discriminatory act by the owner's agents or the corporation. *See Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086, 1100 (7th Cir.1992), *cert. denied*, 508 U.S. 972, 113 S.Ct. 2961, 125 L.Ed.2d 662 (1993); *Miller v. Apartments and Homes of N.J., Inc.*, 646 F.2d 101, 111 (3d Cir.1981); *Williams v. City of New York*, 508 F.2d 356, 361 (2d Cir.1974); Marr v. Rife, 503 F.2d 735, 745 (6th Cir.1974).

Both the Milan and Gwin Actions asserted claims against the defendants, including Kyrk Pyros, individually for alleged violations of the FHAA. The second amended complaint in the Milan Action alleged that Kyrk A. Pyros first permitted Milan to live in the Hotel with his service dog, changed his mind within a couple of days after Milan began living in the building, and "then began the process of removing Milan, and those associated with him, from the building." Def. App. at Ex. A, ¶ 46. That complaint also alleges various acts on the part of Pyros, including asserting "I don't care what the ADA says" in the course of a meeting with the executive director from TRIPIL Services over Milan's service dog (*id.* at ¶ 52); issuing to Kleinmann, through

15

counsel, a notice for Milan to quit the premises within ten days or face eviction (*id*. at ¶¶54 – 56); presenting in bad faith an allegedly false bill to Milan demanding payment for clean-up costs associated with his service dog (*id*. at ¶¶ 70 – 72); itemizing the efforts of three employees for 30 hours of clean-up at a rate of $107.25 per hour; and, issuing, once again through counsel, a notice to quit the premises to Milan, and, five days later, filing a civil complaint against Milan before a Magisterial District Judge (*id*. at ¶¶74 – 77).  Similarly, the complaint in the Gwin Action alleged a "campaign of harassment against Gwin" (Def. App. at Ex. B) by the defendants, including Pyros individually, such as revoking her permission to leave her scooter in the lobby (*id*. at ¶ 22); informing her, through counsel, on the day after she wrote a letter complaining about the treatment of Milan, that her service animal ferrets that she had with her in the apartment over the preceding four months were not permitted under the rules and regulations of the Hotel (*id.* at ¶ 25); sending her a letter, once again through counsel, that she would be evicted if she did not remove the ferrets and pay the remaining balance for the extensive renovations to her apartment within 10 days (*id*. at ¶ 27); having an air horn blown outside of her apartment door (*id.* at ¶ 28); and disrupting her water service (*id*.).  Given the contents of each complaint in these two FHAA actions, there existed sufficient allegations of individual liability on the part of Pyros that extended beyond the scope of the insurance policy issued by Scottsdale.  To accept otherwise would require accepting the logical fallacy of Erie's position, best represented by:  it is either "A" (Erie Ultraflex policy) or "B" (Scottsdale policy); it is not "A"; so therefore, it must be "B".  The record makes clear, however, that in fact, it is not "B".  Erie's attempt to exempt itself from defending Pyros in his individual capacity does not work to extend the Scottsdale policy into a level of coverage beyond that which it issued.

16

**Conclusion**

For the reasons hereinabove stated, the Court finds that the Motion for Summary Judgment of Defendant Scottsdale Insurance Company will be granted, and the Amended Motion for Summary Judgment filed by Erie Insurance Exchange will be denied. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ERIE INSURANCE EXCHANGE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:11-cv-429 |
| v. | ) | |
| | ) | |
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF COURT

AND NOW, this 7th day of September, 2012, in accordance with the foregoing Memorandum Opinion, it is ORDERED, ADJUDGED, and DECREED that the MOTION FOR SUMMARY JUDGMENT (Doc. No. 30) filed by Defendant Scottsdale Insurance Company is GRANTED.

IT IS FURTHER ORDERED that the Amended Motion for Summary Judgment (Doc. No. 36) filed by Plaintiff Erie Insurance Exchange is DENIED.

IT IS FURTHER ORDERED the Judgment shall be entered in favor of Defendant Scottsdale Insurance Company and against Plaintiff Erie Insurance Exchange on all claims and that Scottsdale shall have no obligation to reimburse Erie for any defense, indemnity or other payments made by Erie in connection with two (2) underlying lawsuits:  Robert Milan v. Kyrk A. Pyros, individually and as General Partner and/or owner of George Washington Hotel, et. al., United States District Court for the Western District of Pennsylvania, No. 2:08-cv-320; and Lucy Giwn v. Kirk A. Pyros, individually and as General Partner and/or owner of George Washington Hotel, et. al., United States District Court for the Western District of Pennsylvania, No. 2:09-cv-527.

The Clerk of Court is ORDERED to docket this case closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: **Arthur J. Leonard, Esquire**
Email: aleonard@rlmlawfirm.com

**Frank J. Lavery , Jr., Esquire**
Email: flavery@laverylaw.com
**Gary S. Kull, Esquire**
Email: gkull@cmk.com
**Sunshine J. Thomas, Esquire**
Email: sthomas@laverylaw.com